## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## (EASTERN DIVISION)

| | |
|---|---|
| RONA LECCIONES WARD, | **Case No.:** 1:22-cv-5261 |
| Plaintiff, | |
| v. | **COMPLAINT AND** <br> **DEMAND FOR JURY TRIAL** |
| WESTLAKE SERVICES, LLC, TRANS UNION, LLC, and EQUIFAX INFORMATION SERVICES, LLC, | 1. **FCRA, 15 USC § 1681 *et seq.*** |
| Defendant. | |

Plaintiff Rona Lecciones Ward ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Westlake Services, LLC ("Westlake"), Equifax Information Services, LLC ("Equifax"), and Trans Union LLC ("Trans Union") (referenced collectively as "Defendants" and Equifax/Trans Union are collectively referenced as "CRA Defendants").

## I.    INTRODUCTION

1.     Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendants.  Plaintiff contends the Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff.  "Consumer reports" under 15 U.S.C. § 1681a(d) include both

1

credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

2.      Plaintiff's Complaint also alleges violations of the FCRA, against Defendant Westlake for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from Defendants.

## II.      JURISDICTION AND VENUE

3.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

4.      Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, a substantial part of Plaintiff's damages were incurred in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District. Further, Defendant Trans Union is headquartered in this District.

## III.      PARTIES

5.      Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

6.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

7. Defendant Westlake is a financial institution engaged in the business of extending credit and collecting debt. Westlake is a furnisher, as defined in 15 U.S.C. § 1681s-2. Upon information and belief, Westlake is regularly engaged in the business of furnishing credit information to the credit reporting agencies. Westlake is headquartered at 4751 WILSHIRE BLVD., SUITE 100 LOS ANGELES, CA 90010. Westlake may be served through its registered agent CORPORATE CREATIONS NETWORK, located at 350 S. NORTHWEST HWY, #300 CHICAGO, IL 60068, USA

8. Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309.

9. Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served at their Registered Agent Illinois Corporation Service Company at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

10. During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Illinois and conducted business in the State of Illinois on a routine and systematic basis.

3

11.     Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendants regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" ("CRAs") as defined by 15 U.S.C. § 1681a(f) of the FCRA.

12.     During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

13.     Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## IV.     FACTUAL BACKGROUND

14.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

15.     The United States Congress decided that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

16.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

17. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

18. CRA Defendants report consumer information about Plaintiff and other consumers through the sale of consumer reports.

19. CRA Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

20. CRA Defendants obtain consumer information from various sources, including furnishers that provide consumer information to Defendants, and information Defendants independently sources itself or through third party providers, vendors or repositories, including computerized reporting services like PACER.

21.     The diligence CRA Defendants exercise in recording consumer bankruptcy filings is not replicated in its reporting of the effects of bankruptcy proceedings and orders upon certain accounts, including accounts that are reaffirmed during a consumer's bankruptcy.

22.     Consequently, CRA Defendants routinely report inaccurate, incomplete, outdated, and materially misleading information about consumers after the consumer bankruptcies are dismissed, without verifying or updating the information as required by § 1681(e)(b), despite possessing information that indicates their reporting is inaccurate.

23.     CRA Defendants also routinely report inaccurate, incomplete, outdated, and materially misleading information about consumers after they have their bankruptcies dismissed.

24.     The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models) to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in Defendants' reports.

25.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

6

26.　　The information reported by CRA Defendants contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in CRA Defendants' consumer reports.

27.　　FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

28.　　FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

29.　　"Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed.

30.　　CRA In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist.

31.　　The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

32.　　However, after a delinquent account has been remedied, a consumer's FICO score may increase so long as the account stays current.

33.　　CRA Defendants voluntarily obtained Plaintiff's consumer bankruptcy information and reported it in individual account tradelines and the Public Records section of Plaintiff's consumer reports.

34.　　CRA Defendants are well aware that when a Chapter 13 bankruptcy is dismissed, none of a consumer's debts and accounts are discharged in bankruptcy.

7

35.     CRA Defendants receive information about account payments/settlements of debts directly from furnishers of account/tradeline information.

36.     However, CRA Defendants regularly report inaccurate information about consumers.

37.     Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendants frequently report information regarding pre-bankruptcy debts based on information they know is incomplete or inaccurate.

38.     Consequently, CRA Defendants regularly publish consumer information that conflicts with information: provided by data furnishers to Defendants, already included in Defendants' credit files, contained in public records that Defendants regularly access, or sourced through Defendants' independent and voluntary efforts.

39.     CRA Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681(e)(b), despite possessing information inconsistent with the reported information that establishes that the reported information is inaccurate.

40.     CRA Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in Defendants' own files.

41.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendants for their inaccurate credit reporting following a Chapter 13 dismissal.

8

42.     Thus, CRA Defendants are on continued notice of their inadequate post-bankruptcy dismissal reporting procedures, which cause Defendants to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

*Allegations Specific to the Credit Reporting of Plaintiff*

43.     In or around May 2021, Plaintiff filed for a voluntary bankruptcy under Chapter 13 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District Court of Arizona.

44.     Plaintiff's bankruptcy was dismissed around July 2021.

45.     Sometime after Plaintiff's bankruptcy was dismissed, Plaintiff obtained Plaintiff's consumer reports to ensure that Plaintiff's credit account tradelines and bankruptcy dismissal were being reported accurately.

46.     CRA Defendants obtained notice of Plaintiff's bankruptcy dismissal through their routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by CRA Defendants in Plaintiff's consumer reports.

47.     In the Public Records section of Plaintiff's consumer report, CRA Defendants included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been dismissed.

48.     CRA Defendants were inaccurately reporting some of Plaintiff's accounts as included in Plaintiff's bankruptcy, even though Plaintiff's bankruptcy was dismissed.

49.     Defendant Trans Union and Defendant Equifax were inaccurately reporting Plaintiff's Westlake Service Inc account (the "Westlake Account"), opened in March 2020,

account no. ending with ****82, as included in Plaintiff's Chapter 13 bankruptcy, although Plaintiff's Chapter 13 bankruptcy was dismissed.

50.     CRA Defendants are aware that CRAs are not permitted to report account that are not discharged in a bankruptcy with a status of "discharged through bankruptcy."

51.     Because Plaintiff's bankruptcy was dismissed, CRA Defendants should not have reported any of Plaintiff's Accounts as included in the bankruptcy.

52.     Plaintiff continued payments on the Accounts after the bankruptcy was dismissed, and therefore, the Account was not dischargeable or discharged.

53.     However, when Plaintiff pulled Plaintiff's consumer reports, Plaintiff discovered that CRA Defendants were not reporting the payments being made on Plaintiff's Accounts, and were instead reporting it as included in Plaintiff's bankruptcy, which was dismissed.

54.     CRA Defendants do not have reasonable procedures in place to detect and correct the reporting of accounts where the bankruptcy as dismissed.

55.     Notably, non-party Experian did not inaccurately report the Westlake Account like Equifax and Trans Union.

56.     CRA Defendants inaccurately reported that Plaintiff discharged the Accounts through bankruptcy when the Accounts were not included in the bankruptcy and Plaintiff's bankruptcy was dismissed.

57.     CRA Defendants failed to indicate and report any payments made on the Accounts after Plaintiff's bankruptcy was dismissed.

10

58.     CRA Defendants' reporting was patently false and materially misleading, as the Accounts were not discharged by Plaintiff's bankruptcy.

*Plaintiff's Disputes*

59.     On or about July 29, 2022, Plaintiff sent dispute letters to Defendants Equifax and Trans Union disputing the accuracy of the reporting of the Westlake Account.

60.     Plaintiff's dispute letter indicated that the Westlake Account was inaccurate and incomplete in that it was missing the payment history.

61.     Based on tracking receipts, Equifax and Trans Union received Plaintiff's dispute letter.

62.     Upon information and belief, Equifax and Trans Union forwarded Plaintiff's dispute to Westlake within 5 business days of receipt.

63.     Plaintiff reviewed her consumer disclosures to assure that the inaccuracy had been updated, but noted that Equifax and Trans Union continued to inaccurately report the Westlake Account as included in the Chapter 13 bankruptcy.

64.     Upon information and belief Equifax and Trans Union did not investigate Plaintiff's dispute and merely forwarded an automated dispute form to Westlake. Rather than perform an investigation based on Plaintiff's dispute, Equifax and Trans Union merely parroted information furnished by Westlake despite awareness that the information was factually inaccurate and conflicted with information known by Equifax and Trans Union.

65.     Upon information and belief, Westlake failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Equifax and Trans Union.

Westlake failed, among other things, to review all relevant information regarding the dispute or ignored this information. Consequently, Westlake continued to furnish inaccurate data to Equifax and Trans Union despite knowledge of Plaintiff's dispute and otherwise possessing information from which Westlake should have reported accurate information about the Account.

*Plaintiff's Damages*

66.     After her bankruptcy dismissal, Plaintiff applied for a credit with THD/CBNA, Capital One, and Citibank and was denied due to the erroneous reporting by Equifax

67.     After her bankruptcy dismissal, Plaintiff applied for a credit with Capital One and was denied due to the erroneous reporting by Trans Union.

68.     After her bankruptcy dismissal, Plaintiff applied for a credit with Mission Lane and was approved at less favorable rates due to the erroneous reporting by Trans Union.

69.     Defendants' inaccurate reporting of the Accounts, along with additional information belonging to Plaintiff, was published to THD/CBNA, Capital One, Citibank, and Mission Lane by Defendants during the process of Plaintiff's credit applications.

70.     Plaintiff's consumer credit file and consumer reports were also reviewed by numerous other entities after the dismissal of her bankruptcy; those entities viewed the erroneous information published by Trans Union and Equifax.

71.    As a direct result of Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

72.    As a direct result of Defendant's inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees payable, related to Defendants' inaccurate reporting.

73.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, disturbance of sleep, reputational damage, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

## V.    COUNT I
### Violations of the FCRA, 15 U.S.C. § 1681e(b) – CRA Defendants

74.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

75.    The FCRA requires CRAs, like CRA Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

76.    CRA Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer's bankruptcy is dismissed.

77.    CRA Defendants received notice of Plaintiff's bankruptcy dismissal through public records, independent collection of consumer information directly obtained by CRA

Defendants through sources of consumer information such as Lexis Nexis, CRA Defendants' own files, and information provided by data furnishers, yet CRA Defendants rejected that information.

78. CRA Defendants' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who's bankruptcy was dismissed.

79. CRA Defendants' unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy.

80. CRA Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update debts not included in bankruptcy as required by § 1681(e)(b).

81. CRA Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records and their own files, including other furnishers that report to Defendants that the consumer's bankruptcy has been dismissed.

82. In this case, the inaccurately reported debts that were not included in bankruptcy and should not have been reporting as included in bankruptcy.

83. CRA Defendants' failure to maintain and employ reasonable procedures to assure the maximum accuracy of consumers' accounts is particularly egregious because the Defendants regularly and voluntarily search for consumer bankruptcy information to include in credit files.

84. CRA Defendants knew or should have known they are obligated, by the FCRA, to maintain and employ reasonable procedures to assure it reports maximally accurate consumer credit information.

85. CRA Defendants knew or should have known they are obligated, by the FCRA, to update consumer reports and individual tradelines after receiving notice of a Chapter 7 Bankruptcy dismissal.

86. CRA Defendants knew or should have known that the effect of bankruptcy dismissal is that all of a consumer's accounts are not discharged in bankruptcy.

87. CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving the CRA Defendants.

88. Therefore, CRA Defendants had ample notice of their obligations under the FCRA and their continued use of unreasonable procedures.

89. If CRA Defendants contend they did not have sufficient notice, CRA Defendants must justify their own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including where consumers file for Chapter 7 Bankruptcy and were dismissed.

90. CRA Defendants regularly conduct voluntary public records searches with the intention of including bankruptcy information on the consumer reports they sell to other parties for a profit.

91.     In this case, CRA Defendants knew or should have known about Plaintiff's bankruptcy filing and dismissal and failed to include that information on some accounts in Plaintiff's consumer disclosure and in consumer reports published to third parties.

92.     When CRA Defendants received notice of Plaintiff's bankruptcy dismissal information, they had an obligation to ensure they reported Plaintiff's dismissal and its effects with maximal accuracy.

93.     Unfortunately, CRA Defendants willfully and consciously breached their duties as a CRAs and deprived Plaintiff of his right to a fair and accurate consumer report.

94.     Despite knowledge of its legal obligations, CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure/consumer report.

95.     CRA Defendants know that debts should not be reported as included in bankruptcy if the bankruptcy was dismissed.

96.     Yet, in this case, Defendants accounts as included in bankruptcy, even though the bankruptcy was dismissed.

97.     Defendants knew or should have known the information they reported about the accounts was inaccurate.

98.     CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendants knew or should have known the information Defendants is/are reporting is inaccurate, and/or otherwise contradicted by information known by Defendants, reported to Defendants, and/or reasonably available to Defendants.

99.     CRA Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

16

100. Alternatively, CRA Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

101. CRA Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

102. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Defendants inaccurately failing to report that the debt was not discharged in bankruptcy.

103. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

104. Defendants are direct and proximate causes of Plaintiff's damages.

105. Defendants are substantial factors in Plaintiff's damages.

106. Therefore, Defendants are liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

**COUNT II**
**Defendant Westlake**
**(Violations of the FCRA, 15 U.S.C. § 1681s-2(b))**

107. At all times pertinent hereto, Defendant Westlake was a "person" as that term is defined by 15 U.S.C. § 168la(b) and a "furnisher of information" to the credit reporting agencies.

108. The FCRA requires that furnishers of information like Westlake to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the credit reporting agency. If the investigation

17

reveals the information is incomplete or inaccurate, report those results to all credit reporting agencies to which the furnisher has provided the inaccurate information.

109.    Westlake knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law. Westlake obtained or had available substantial written materials that apprised them of its duties under the FCRA. Despite knowing these legal obligations, Westlake acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

110.    Plaintiff disputed the Westlake tradeline through Trans Union and Equifax.

111.    Thereafter, the credit reporting agencies forwarded Plaintiff's dispute to Westlake, notifying Westlake that Plaintiff was disputing the information it had furnished about the Account.

112.    Westlake received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

113.    Westlake continues to furnish inaccurate information about Plaintiff, even though Westlake possessed all relevant information about the Account and the inaccuracy that Plaintiff disputed.

114.    The inaccurate Westlake account materially and adversely affects Plaintiff's credit standing.

115. On at least one occasion within the past two years, by example only and without limitations, Defendant Westlake violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Equifax and Trans Union.

116. Westlake violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

    a. Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

    b. Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

    c. Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

    d. Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

    e. Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

    f. Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the

consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

g. Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b)

117. Westlake unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

118. Westlake is a direct and proximate cause, as well as substantial factors in causing damage and harm to Plaintiff.

119. Consequently, Westlake is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law.

120. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a)     Declaratory judgment that Defendants violated the FCRA;

(b)     An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)     An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)     An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VII.   JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 27th day of September, 2022,

/s/ Syed H. Hussain

Syed H. Hussain (IL #6331378)
**HASEEB LEGAL, LLC**
420 E Waterside Dr #3004
Chicago, IL 60601
T: (954) 225-4934

E: sh@haseeblegal.com

*Attorney for Plaintiff*